May Term,
1851.
_____
THE WHITE
WATER VAL-
LEY CANAL
COMPANY
v.
COMEGYS.

</div>

---

THE WHITE WATER VALLEY CANAL COMPANY *v.* COMEGYS
and Others.

As a general rule, no bill of interpleader lies in behalf of a tenant against his landlord.

In cases of tenants seeking relief by bills of interpleader, it must appear that the persons claiming the same rent, claim in privity of contract or tenure, as the case of mortgagor and mortgagee, or of trustee and *cestui que trust*, or where the estate is settled to the separate use of a married woman, of which the tenant has notice, and the husband has been in receipt of the rent. In such case the tenant puts himself on the mere un-

May Term,
1851.

THE WHITE
WATER VAL-
LEY CANAL
COMPANY
v.
COMEGYS.

Monday,
May 26.

certainty of the person to whom he is to pay rent, and affirms the title of his landlord.

Threats to commit waste will authorize an injunction.

APPEAL from the *Dearborn* Circuit Court.

BLACKFORD, J.—This was a bill in chancery filed by *Milton Gregg* against *C. G. W. Comegys*, the *White Water Valley Canal Company*, and *S. S. Barr* and *C. Febiger*.

The facts, according to the bill, are as follow:

In 1840, the state leased to one *E. D. John*, certain water to be taken from the basin of a canal near the *Ohio* river at *Lawrenceburgh*, for a term of thirty years, which water was to be sufficient to propel four run of mill-stones of a specified size. The mill, according to the lease, was to be built on a lot of ground belonging to said *John*, who was to pass off the water from the mill to said river by a tail-race over his own land. In 1841, *John* sold one-half of his interest in the lease, one half of the lot for the mill, and one-half of the right of way for said race, to *Comegys;* and said *John* and *Comegys* built the mill, and passed off the water from the same as required by the lease. The said *John* afterwards conveyed to one *N. N. John* the lot on which said race ran, and some adjoining lots, reserving the said right of way; and the same lots (the right of way being reserved) finally became the property of *Gregg*, the complainant. *E. D. John* afterwards sold the residue of his interest in the lease, and in the mill-lot, mill, and said right of way, to *Comegys;* and the state transferred said canal to the *White Water Valley Canal Company*. Afterwards, on the 15th of *June*, 1843, the said canal company leased to *Comegys* for a term of twenty years, certain additional water to be taken from said basin, and used at said mill, sufficient to propel three more run of mill-stones of the same size with the others, which water, after it had passed over *Comegy's* wheel, was to be conducted by him in a tail-race, to said river. On the last named day, said canal company leased to the complainant, for a term of twenty years, the water embraced in the two prior leases held by *Comegys*, after said water had passed over

May Term,
1851.

THE WHITE
WATER VAL-
LEY CANAL
COMPANY
v.
COMEGYS.

*Comegys'* wheels, and been used to propel the said seven run of stones; the complainant agreeing to conduct the water from his works, by a tail-race, to said river. The complainant, after his said lease, erected suitable buildings and machinery for the use of the water leased to him in the manufacture of oil, at an expense of 10,000 dollars, and has ever since continued to use said water on his own land, and to pay the rent to said canal company. Comegys knew of the complainant's intention to procure said lease, was present when it was executed, and was a witness to the same. He, *Comegys*, had also full knowledge of the erection of said buildings and machinery as the same were built by the complainant; and of the alterations made by the complainant in said race on the complainant's lot, to enable him to use the water as aforesaid. But at no time did *Comegys* object to the complainant's said proceedings, or to the canal company's right to make the lease to the complainant; nor did *Comegys* ever claim that said water, after it had passed his wheels, was his, nor had the complainant any knowledge of any such claim by *Comegys*, until he, the complainant, had built his mill and put it in operation. After the complainant had erected said buildings and machinery, and had used for many years the water leased to him, and had paid the canal company over 1,000 dollars rent therefor, *Comegys* sued the complainant in trespass for taking said water and using it as aforesaid, and recovered judgment. Since the recovery of that judgment, *Comegys* has sold his said mill-lot, mill, and his interest in his said leases with said right of way, to the defendants, *Barr* and *Febiger*, who claim the water used by the complainant as aforesaid, and threaten to divert the same from its passage to the complainant's wheels, or otherwise compel him to pay them the rent due, under his lease, to the canal company. The canal company also claim the same rent from the complainant. There was due in 1846, from the complainant as rent under his lease, the sum of 150 dollars, which money he had in Court for the party entitled to it.

May Term,
1851.

THE WHITE
WATER VAL-
LEY CANAL
COMPANY
v.
COMEGYS.

The bill prays that the defendants may interplead, and litigate with each other their respective rights to the water in dispute, and to the said rent. It also prays that if the canal company had a right to make the lease to the complainant, *Comegys* and his assignees should be perpetually enjoined from interfering with the complainant's use of said water. There is also a prayer for general relief.

The defendants answered the bill.

The facts as agreed upon and proved, are set out in the transcript.

The Circuit Court decreed, in the first place, that the defendants should interplead. The cause being afterwards submitted to the Court, there was a final decree by which it was held that the rent mentioned in the bill should be paid to *Barr* and *Febiger*, and that the canal company had no right to lease to the complainant the water in question.

We will first inquire whether the bill is sustainable as a bill of interpleader.

The canal company leased the water, which is the subject matter of this bill, to the complainant; and the lessee is in quiet possession of the premises, and has been for several years in such possession, under his lease. And the doctrine is well settled that a tenant cannot dispute the title of his landlord. Arch. Land. and Tenant, 219.—*Kinney* v. *Doe*, 8 Blackf. 350. Judge *Story* says, "In the cases of tenants seeking such relief, (by bills of interpleader) it must appear that the persons claiming the same rent, claim in privity of contract or tenure, as in the case of mortgagor and mortgagee, or of trustee and *cestui que trust*, or where the estate is settled to the separate use of a married woman, of which the tenant has notice, and the husband has been in the receipt of the rent. In cases of this sort, the tenant does not dispute the title of his landlord, but he affirms that title, and the tenure and contract by which the rent is payable, and puts himself on the mere uncertainty of the person to whom he is to pay the rent. But if a claim to the rent

May Term, 1851.

THE WHITE WATER VALLEY CANAL COMPANY v. COMEGYS.

should be set up by a mere stranger under a title paramount, and not in privity of contract or tenure (as if the stranger should bring ejectment against the tenant), there the tenant cannot compel his landlord to interplead with such stranger; for it is not a demand of the same nature or in the same right. The stranger cannot demand the rent, as such, but he has, if successful in the ejectment, only a right to damages for use and occupation; whereas, the landlord claims the rent, as such, in privity of contract, tenure, and title. The debt or duty is not the same; and interpleader lies only when it is so and in privity." 2 Story's Eq. Juris. s. 812. See, also, *Crane* v. *Burntrager,* Smith's R. 156. (1.)

In the case before us the complainant calls upon his landlord, the canal company, to litigate the title, as to the leasehold property, with strangers. That the complainant has no right to do. And the bill, therefore, does not make out a proper case of interpleader.

We are next to inquire whether there is any other relief for the complainant in this suit. The bill exhibits the complainant's title, and alleges that *Barr* and *Febiger* claim the water, and threaten to divert the same from the complainant's wheels. There are, no doubt, cases where threats to commit waste would authorize an injunction. *Coffin* v. *Coffin,* Jacob, 70, is such a case. But whether threats to commit such a trespass as that mentioned above, would have that effect, we need not now decide; for supposing they would, that will not affect this case. The alleged threats are not admitted in the answer of *Barr* and *Febiger,* and the bill relative to those threats was not taken as confessed. It was incumbent, therefore, on the plaintiff to prove that part of the bill. There was not, however, any such proof. The consequence is, that, supposing the complainant's title to the water to be good against *Barr* and *Febiger,* and that the alleged threats, if made, would have authorized an injunction restraining those defendants from committing the trespass, still the injunction cannot be granted, as the threats were not proved.

The bill does not charge *Comegys* with threatening, at any time, to divert the water as aforesaid; nor, indeed, does the bill allege that he has, since his sale to *Barr* and *Febiger*, in any manner claimed said water.

It may be proper to observe that the judgment obtained by *Comegys* in the action of trespass, cannot be considered as establishing his title to the water, as it does not appear that such title was in issue. See *Outram* v. *Morewood*, 3 East, 346.

*Per Curiam.*—The decree is reversed with costs. Cause remanded with instructions to dismiss the bill for want of equity. Costs here.

*G. H. Dunn* and *S. W. Parker*, for the appellant.

*P. L. Spooner*, *J. Ryman*, and *J. Sullivan*, for the appellees.

